UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FELIX FELDHEIM,

         Plaintiff,

  -v-

FINANCIAL RECOVERY SERVICES, INC.,

         Defendant.

No. 16-CV-3873 (KMK)

OPINION & ORDER

Appearances:

Edward B. Geller, Esq.
Edward B. Geller, Esq., P.C.
Bronx, NY
*Counsel for Plaintiff*

Michael T. Etmund, Esq.
Moss & Barnett
Minneapolis, MN
*Counsel for Defendant*

Matthew B. Spergel, Esq.
Scott A. Schechter, Esq.
Kaufman Borgeest & Ryan, LLP
Valhalla, NY
*Counsel for Defendant*

Patrick Stoltz, Esq.
Landman Corsi Ballaine & Ford PC
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

  Plaintiff Felix Feldheim ("Plaintiff") brings this putative class action against Financial Recovery Services, Inc. ("FRS" or "Defendant"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. (*See* Am. Compl. (Dkt. No. 17).) Before the Court is Defendant's Motion To Dismiss pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6) (the "Motion"). (*See* Dkt. No. 26.) For the reasons to follow, Defendant's Motion is granted.

## I. Background

### A. Factual Background

The following facts are taken from Plaintiff's Amended Complaint and are assumed true for the purpose of resolving the instant Motion.

Plaintiff alleges that Defendant, "on behalf of a third-party or itself . . . began efforts to collect an alleged consumer debt from Plaintiff." (Am. Compl. ¶ 22.) "On or about January 26[,] 2016[,] Plaintiff received a mass-produced notice from Defendant . . . [bearing] a heading stating: "Tax Season Settlement Reduction Offer." (*Id.* ¶¶ 24–25.) The notice alerted Plaintiff that "the current creditor was Discover Bank" and that Plaintiff owed $4,414.61. (*Id.* ¶ 27.) The notice also provided three reduction options to Plaintiff: (1) "a reduction of 75% for a lump sum payment of $1[,]003[.]65"; (2) "a reduction of 68.50[%] for a [two] time payment of $1,434[.]74"; and (3) "a reduction of 60% for a three time payment of $1,765.83." (*Id.* ¶ 28.) Finally, the notice stated that "[a]s of the date of this notice[,] you owe [$]4,414.61 . . . ." (*Id.* ¶ 29 (internal quotation marks omitted).) Plaintiff avers that this language "implie[d] that the balance w[ould] change on a daily bas[i]s and interest [wa]s being charged." (*Id.*)

As a result of Defendant's alleged violations of the FDCPA, Plaintiff seeks actual damages, statutory damages, attorney's fees and costs, and "a declaration that . . . Defendant's practices violated the FDCPA." (*Id.* at unnumbered 7.)

### B. Procedural History

Plaintiff filed the initial Complaint in this Action on May 24, 2016. (*See* Dkt. No. 1.) At a conference before the Court on September 13, 2016, Plaintiff was granted leave to file an

Amended Complaint by no later than October 13, 2016. (*See* Dkt. (minute entry for Sept. 13, 2016).) Plaintiff failed to file an Amended Complaint within the time permitted and accordingly, on October 19, 2016, the Court issued an Order To Show Cause, ordering Plaintiff to show cause why the Action should not be dismissed for failure to prosecute. (*See* Dkt. No. 14.) In a letter filed the following day, counsel for Plaintiff notified the Court that he "did not file an Amended Complaint"—despite the Court's directive—"because [he] was waiting to first hear from Defendant regarding [a settlement] demand." (*See* Dkt. No. 15.) The Court granted Plaintiff an extension of time to file an Amended Complaint, (*see* Dkt. No. 16), and Plaintiff filed the Amended Complaint on October 27, 2016, (*see* Dkt. No. 17).

Pursuant to a Scheduling Order dated December 13, 2016, (*see* Dkt. No. 25), Defendant filed the instant Motion To Dismiss and accompanying memorandum of law on January 17, 2017, (*see* Dkt. Nos. 26–27). On February 22, 2017, two days before Plaintiff's opposition was due, Plaintiff's counsel requested an extension, (*see* Dkt. No. 28), which the Court granted the following day, (*see* Dkt. No. 29). On April 14, 2017, Defendant filed a letter informing the Court that while "[t]here was no [m]emorandum in [o]pposition filed electronically by Plaintiff . . . , a copy was e-mailed to [Defendant's counsel's] office on March 24, 2017." (*See* Dkt. No. 30.) The letter also informed the Court that Defendant did not intend to file papers in reply. (*See id.*) Without explanation for Plaintiff's failure to timely file his opposition with the Court, Plaintiff filed his opposition on April 17, 2014. (*See* Dkt. No. 31.)

II. Discussion

A. Standard of Review

Defendant moves to dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Def.'s Mem. of Law in Supp. of Mot. for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6) ("Defs.' Mem.") 1 (Dkt. No. 27).)

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively identical." *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (internal quotation marks omitted); *see also Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (same), *aff'd*, 591 F. App'x 28 (2d Cir. 2015). "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Gonzalez*, 2014 WL 2475893, at *2 (internal quotation marks omitted); *see also Seemann v. U.S. Postal Serv.*, No. 11-CV-206, 2012 WL 1999847, at *1 (D. Vt. June 4, 2012) (same). However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Gonzalez*, 2014 WL 2475893, at *2; *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)). This allocation of the burden of proof is "[t]he only substantive difference" between the standards of review under these two rules. *Smith v. St. Luke's Roosevelt Hosp.*, No. 08-CV-4710, 2009 WL 2447754, at *9 n.10

4

(S.D.N.Y. Aug. 11, 2009), *adopted by* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009); *see also Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009) (same).

### 1. Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (internal quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *see also Butler v. Ross*, No. 16-CV-1282, 2016 WL 3264134, at *3 (S.D.N.Y. June 14, 2016) (same). Nevertheless, "[u]nlike Article III standing, which ordinarily should be determined before reaching the merits, statutory standing may be assumed for the purposes of deciding whether the plaintiff otherwise has a viable cause of action." *Coan v. Kaufman*, 457 F.3d 250, 256 (2d Cir. 2006) (citation omitted). While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration and internal quotation marks omitted); *see also Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014)

5

("[W]here subject matter jurisdiction is contested a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.").

2. Rule 12(b)(6)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alteration, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the

hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alteration and internal quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

### 3. FDCPA

"The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting 15 U.S.C. § 1692(e)). "The FDCPA establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights." *Id.* (internal quotation marks omitted); *see also Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 487 (S.D.N.Y. 2014) (same). "Debt collectors that violate the FDCPA are strictly liable, meaning that a consumer need not show intentional conduct by the debt collector

to be entitled to damages." *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012) (internal quotation marks omitted). Moreover, a single violation is sufficient to subject a debt collector to liability under the statute. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 133 (2d Cir. 2010) (noting that "a single violation of the FDCPA is sufficient to impose liability").

"The FDCPA creates a general prohibition against the use of 'false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (quoting 15 U.S.C. § 1692e). "Section 1692e contains a non-exhaustive list of practices within the purview of this prohibition . . . ." *Id.* Relevant here is § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). "A plaintiff may state a claim for an FDCPA violation by alleging that a defendant made a representation that was false or deceptive or misleading." *Russo v. United Recovery Sys., LP*, No. 14-CV-851, 2014 WL 7140498, at *4 (E.D.N.Y. Dec. 12, 2014) (emphases, alteration, and internal quotation marks omitted); *see also Sutton v. Fin. Recovery Servs., Inc.*, 121 F. Supp. 3d 309, 313 (E.D.N.Y. 2015) ("A collection letter will be considered deceptive when it could mislead a putative-debtor as to the nature and legal status of the underlying debt, or when it could impede a consumer's ability to respond to or dispute collection." (internal quotation marks and alteration omitted)); *cf. Russell v. Equifax A.R.S.*, 74 F.3d 30, 34–35 (2d Cir. 1996) (finding a violation of § 1692e(10) where a consumer could have read a collection letter to allow her either 30 days or 10 days to dispute her claim). Courts "apply an objective test based on the understanding of the 'least sophisticated consumer' in determining whether a [communication] violates [§] 1692e." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993); *see also Easterling*, 692 F.3d at 233 ("Whether a collection

8

letter is false, deceptive, or misleading under the FDCPA is determined from the perspective of the objective least sophisticated consumer." (internal quotation marks omitted)). "Under this standard, 'collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate.'" *Easterling*, 692 F.3d at 233 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)). However, "in crafting a norm that protects the naïve and the credulous the courts have carefully preserved the concept of reasonableness." *Id.* (internal quotation marks omitted).

Also relevant here is the prefatory clause of FDCPA § 1692f, which further bars the use of any "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. This "clause is followed by a list of specific 'examples of . . . conduct' that constitutes a violation of [§ 1692f]." *Sutton*, 121 F. Supp. 3d at 314 (first alteration in original) (quoting *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 236 n.2 (2d Cir. 1998)). Aside from this list of examples, "the FDCPA does not purport to define 'unfair or unconscionable.'" *Rojas v. Forster & Garbus LLP*, No. 13-CV-2825, 2014 WL 3810124, at *5 (E.D.N.Y. July 31, 2014). Indeed, "[c]ourts analyzing claims under [§] 1692f have acknowledged that the phrase . . . is as vague as they come." *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 531 (S.D.N.Y. 2013) (alteration and internal quotation marks omitted). Nonetheless, "viable claims . . . are generally defined by either (1) the unauthorized taking of money or property . . . , or (2) communicating with a consumer in a manner that will cause their *public* embarrassment or invasion of privacy." *Sutton*, 121 F. Supp. 3d at 315 (collecting cases). "On the other hand, courts have consistently held that relatively innocuous communications that *correctly* inform debtors of their potential liability and are not misleading, deceptive, or abusive of the debt collector's superior economic position do not violate [§] 1692f." *Id.* (alterations and internal quotation marks omitted).

B.  Analysis

    1.  Lack of Standing

The Court first addresses Defendant's argument that Plaintiff's claims should be dismissed pursuant to Rule 12(b)(1) because he "has alleged a 'bare procedural violation' of the FDCPA, 'divorced from any concrete harm'" and thus "fails to satisfy the 'injury-in-fact' predicate of Article III standing."  (Def.'s Mem. 6 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)).)

"The jurisdiction of federal courts is defined and limited by Article III of the Constitution[, and] the judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.'"  *Flast v. Cohen*, 392 U.S. 83, 94 (1968).  "[A]t [the] uncontroverted core [of the 'case or controversy' requirement] lies the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural."  *Russman v. Bd. of Educ.*, 260 F.3d 114, 118 (2d Cir. 2001).  To meet that minimum constitutional threshold, Plaintiff must establish three things: "first, that [he] has sustained an injury in fact which is both concrete and particularized and actual or imminent, second, that the injury was in some sense caused by the opponent's action or omission, and finally, that a favorable resolution of the case is likely to redress the injury."  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015) (citations and internal quotation marks omitted); *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) ("[Article] III requires the party who invokes the court's authority to show that he [or she] personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." (internal quotation marks omitted)); *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009) ("[T]here are three Article III standing requirements: (1) the

plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." (internal quotation marks omitted)).

"Congress's authority to create new legal interests by statute, the invasion of which can support standing, is beyond question." *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016) (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). "However, even where Congress has codified a statutory right, a plaintiff must still allege that she has suffered a concrete and particularized injury connected to that interest." *Bautz v. ARS Nat'l Servs., Inc.*, — F. Supp. 3d —, 2016 WL 7422301, at *4 (E.D.N.Y. Dec. 23, 2016). "In other words, the creation of a statutory interest does not vitiate Article III's standing requirements." *Id.*

Defendant argues that "Plaintiff has asserted a bare procedural violation of the FDCPA," (Def.'s Mem. 8), and pursuant to the Supreme Court's ruling in *Spokeo, Inc. v. Robins*, "cannot . . . satisfy the injury-in-fact requirement of Article III," 136 S. Ct. at 1549. Defendant specifically contends that "Plaintiff does not assert that he failed to settle or otherwise pay the debt, and the amount of the debt increased . . . . [, n]or does Plaintiff assert that other settlement offers were received at other times of the year," and that any such arguments are "conjectural or hypothetical at best, and fail to establish any concrete injury in fact." (Def.'s Mem. 8.)

In *Spokeo*, addressing whether the plaintiff had standing to asserts a claim under the Fair Credit Reporting Act ("FCRA"), the Supreme Court found that while "a bare procedural violation, divorced from any concrete harm, [would not] satisfy the injury-in-fact requirement of Article III," 136 S. Ct. at 1549, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact . . . [and] a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* The Supreme

Court found that in passing the FCRA, Congress intended to "curb the dissemination of false information by adopting procedures designed to decrease that risk." *Id.* at 1550. The Court ultimately remanded the action to the Ninth Circuit to determine "whether the particular procedural violations alleged in th[e] case entail[ed] a degree of risk sufficient to meet the concreteness requirement." *Id.*

Recently, in *Strubel v. Comenity Bank*, a case brought pursuant to the Truth In Lending Act ("TILA"), the Second Circuit applied *Spokeo* when addressing the defendant's argument that the plaintiff lacked standing because she alleged mere procedural violations of TILA. *See* 842 F.3d 181. The Second Circuit clarified that *Spokeo* did not "categorically . . . preclude[] violations of statutorily mandated procedures from qualifying as concrete injuries supporting standing," *id.* at 189, but rather, "where Congress conferred [a] procedural right to protect a plaintiff's concrete interests," a court must ask whether "the procedural violation presents a 'risk of real harm' to that concrete interest," *id.* at 190 (quoting *Spokeo*, 136 S. Ct. at 1549). The Second Circuit held that TILA's "disclosure requirements . . . serve[] to protect a consumer's concrete interest in 'avoiding the uninformed use of credit,' a core object of . . . TILA" and that "[f]or that reason, a creditor's alleged violation of each notice requirement, by itself g[ave] rise to a 'risk of real harm' to the consumer's concrete interest in the informed use of credit." *Id.* "Having alleged such procedural violations, [the plaintiff] was not required to allege any *additional* harm to demonstrate the concrete injury necessary for standing." *Id.* at 191 (internal quotation marks omitted); *see also Bautz*, 2016 WL 7422301, at *5–7 (discussing *Spokeo* and *Strubel*).

"Read together, *Spokeo* and *Strubel* reaffirm the long-standing principle that Congress can recognize new interests—either tangible or intangible—through legislation and confer

12

private rights of action to protect those interests." *Bautz*, 2016 WL 7422301, at *7. "Congress enacted the FDCPA to remedy a distinct problem: 'abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id.* at *8 (quoting 15 U.S.C. § 1692(e)). "[B]ecause the FDCPA is primarily a consumer protection statute, [courts] must construe its terms in liberal fashion to achieve the underlying Congressional purpose." *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016) (alteration, citation, and internal quotation marks omitted). "[The Second Circuit] ha[s] consistently interpreted the statute with [these] congressional object[ives] in mind." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 95 (2d Cir. 2008).

Accordingly, "making a false statement in connection with an attempt to collect a debt is sufficient harm for standing purposes. In other words, a plaintiff who receives such a misrepresentation 'has suffered injury in precisely the form [§] 1692e of the FDCPA was intended to guard against.'" *Bautz*, 2016 WL 7422301, at *9 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982) (alteration omitted)). "[A]ctual damages are not required for standing under the FDCPA." *Miller*, 321 F.3d at 307. "[T]he majority of post-*Spokeo* decisions that have analyzed standing under the FDCPA have found that alleging a use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt, establishes a concrete injury." *Bautz*, 2016 WL 7422301, at *10 (collecting cases) (citation and internal quotation marks omitted).

In light of the Second Circuit's interpretation of *Spokeo*, Defendant's arguments that "Plaintiff does not assert that he failed to settle or otherwise pay the debt, and the amount of the debt increased . . . . [or] that other settlement offers were received at other times of the year," are

13

unavailing. (Def.'s Mem. 8.) Plaintiff's claims are neither "conjectural [n]or hypothetical," (*id.*), because the FDCPA creates a "new legal interest by statute, the invasion of which can support standing," *Strubel*, 842 F.3d at 188. Thus, the Court has subject matter jurisdiction to hear Plaintiff's claims and now turns to Defendant's challenge under Rule 12(b)(6).

### 2. Failure to State a Claim

Defendant also contends that "Plaintiff's claims should be dismissed for failure to state a claim" because "FRS' statement setting forth the balance as of the date of the [notice] is not deceptive or unfair, nor are FRS' tax season reduction settlement offers deceptive or unfair." (Def.'s Mem. 9.)

The Court disagrees with Plaintiff's characterization that the statement in the notice that "[a]s of the date of this notice you owe $4[,]414.61 deceptively and falsely implies that if . . . Plaintiff doesn't pay the amount demanded in full or accept one of the settlement offers then the amount to pay will be greater in the future." (Am. Compl. ¶ 32 (internal quotation marks omitted).) As Defendant notes, this argument has been explicitly rejected by at least one district court and the Court is aware of no authority that has accepted it. *See Ghulyani v. Stephens & Michaels Assocs., Inc.*, No. 15-CV-5191, 2015 WL 6503849, at *3 (S.D.N.Y. Oct. 26, 2015) ("[P]retending the clause 'Balance Due as of the Date of this Letter' actually reads 'Balance Due as of the Date of this Letter, as your balance may be subject to increase due to interest' . . . . [is a] farfetched and implausible interpretation.").

Simply put, the language of the notice does not "impl[y]" or "purport"—deceptively or otherwise—that the balance Plaintiff owed would increase over time. (Am. Compl. ¶ 32.)[1] A

---

[1] Additionally, Plaintiff offers no factual support for the contention that the amount owed would increase on a *daily* basis. (*See* Am. Compl. ¶ 32 ("Defendant is in violation of [§§ 1692e

14

plain reading of the notice's quoted language reveals that it was not false, deceptive, or misleading.

Plaintiff's allegation that "Defendant further violated [§§ 1692e and 1692e(10)] by misleading . . . Plaintiff into believing that because it is tax season [it has] a special settlement reduction offer when in fact . . . Defendant always provides such settlement offers," similarly fails. (*Id.* ¶ 33.) Plaintiff offers no facts to support the contention that the letter was a one-time offer or even a limited offer and provides no authority—and the Court is aware of none—that supports the notion that including a "Tax Season Settlement Reduction Offer" heading violates the FDCPA. This language does not "mislead a putative-debtor as to the nature and legal status of the underlying debt" nor "impede a consumer's ability to respond to or dispute collection." *Sutton*, 121 F. Supp. 3d at 313 (internal quotation marks omitted).

Plaintiff additionally claims that "Defendant violated [§ 1692f] by unfairly and unconscionably creating and mailing to consumers written notices which suggest . . . that they are being offered an opportunity to settle an interest bearing account and that the amount owed would be greater in the future, when in fact there is no interest being charged . . . ." (Am. Compl. ¶ 36.) This claim fails for the same reasons stated above, namely that nothing on the face of the letter implies that Plaintiff's account is "interest bearing" or "that the amount owed would be greater in the future." (*Id.*)

Defendant notifying Plaintiff of his balance and providing three options for "Tax [S]eason Reduction," (*id*. ¶ 28 (internal quotation marks omitted)), is not "unfair or unconscionable," 15 U.S.C. § 1692f. "[S]uch conduct is far less troubling than conduct that has

---

and 1692e(10) of the FDCPA] by sending written communications to Plaintiff and consumers which falsely purport that there is interest charging on the account on a daily basis.").)

been found to violate § 1692f." *Acevedo v. Pinnacle Credit Servs., L.L.C.*, No. 15-CV-9760, 2017 WL 658715, at *4 (S.D.N.Y. Feb. 14, 2017); *see also Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014) ("Maintaining an invalid lien against a debtor's home falls comfortably within the kinds of practices Congress has identified as unfair under § 1692f of the FDCPA."); *Okyere*, 961 F. Supp. 2d at 531 (denying motion to dismiss a § 1692f claim where the defendant seized and retained money from the plaintiff's bank account in violation of a court order). Rather, the notice Plaintiff received is the type of "'relatively innocuous' communication[] that do[es] not violate [§] 1692f." *Sutton*, 121 F. Supp. 3d at 316; *see also id.* (finding that a collection letter did not violate § 1692f because the plaintiff did "not allege[] any of the defining characteristics of a claim under [§] 1692f's prefatory [clause]—that [the defendant] has attempted to take his money or property, or that it has caused his public embarrassment"). Nor are Defendant's statements in the notice, as pled, false. Plaintiff's claims pursuant to § 1692f are therefore dismissed.

### III. Conclusion

For the reasons stated above, Defendant's Motion is granted. Throughout the course of this Action, Plaintiff has failed to comply with the Court's Scheduling Order, been granted multiple extensions, and failed to timely file his opposition with the Court. Plaintiff has already amended his Complaint and as it fails to state a claim, it is dismissed with prejudice. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alteration and internal quotation marks omitted)).

The Clerk of Court is respectfully directed to terminate the pending Motion, (*see* Dkt. No. 26), and close this case.

SO ORDERED.

DATED: June 28, 2017
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE